**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

John Allen Ontjes,   ) No. CV-12-00696-PHX-GMS (SPL)
           )
     Petitioner, ) **REPORT AND RECOMMENDATION**
           )
vs.          )
           )
Charles L. Ryan, et al.,   )
           )
     Respondents. )
           )

TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:

   Petitioner John Allen Ontjes, who is confined in the Arizona State Prison-Kingman, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1).

**BACKGROUND**

   On April 3, 2008, Petitioner was indicted by a grand jury in the Maricopa County Superior Court ("Superior Court"), Case No. CR 2007-00169570, on six counts: two counts for sale or transportation of dangerous drugs (Counts 1 and 2); one count possession of dangerous drugs (methamphetamine) for sale (Count 3); one count of misconduct involving weapons (Count 4); one count of theft (Count 5); and one count of possession of drug paraphernalia (Count 6). (Doc. 14-1, Exh. A.) In a memorandum decision, the Arizona Court of Appeals ("Appellate Court") summarized the facts leading to the charges as follows:

> In two separate transactions occurring on two separate occasions, November 15, 2006 and December 6, 2006, defendant sold a Mesa Police Department undercover narcotics detective one quarter ounce of crystal methamphetamine for $250. Mesa police arrested defendant on December 8, 2006. At the time of his arrest, police found a baggie of crystal meth and a glass smoking pipe on defendant's person and additional crystal meth in defendant's wallet located inside the vehicle defendant was driving. Defendant admitted using crystal meth for about two years and also admitted that he had started selling it about six months prior to his arrest. During a subsequent search of defendant's residence, police found several weapons, including a "Glock brand pistol" that had been reported stolen by its owner, as well as several "micro baggies" typically used by dealers to package methamphetamine.

(Doc. 14-1, Exh. L); *State v. Ontjes*, No. 1 CA-CR 09-0185, 2010 WL 2540491, *1 (Ariz. Ct. App. June 24, 2010). [1]

Following a 4-day jury trial, on November 25, 2008, Petitioner was found guilty on Counts 1, 2, 3, and 6, and was acquitted of Counts 4 and 5. (Doc. 14-1, Exh. F and I.) At a presentencing hearing held on January 6, 2009, Petitioner admitted to three prior felony convictions for aggravated driving under the influence of intoxicating liquor. [2] (Doc. 14-1, Exh. G.) On February 26, 2009, Petitioner was sentenced to four concurrent terms of imprisonment, totaling 14 years. (Doc. 14-1, Exh. I.) The Superior Court further ordered restitution on Count 1 in the amount of $500, and fines in the amount of $2,000 each on Counts 1, 2, and 3. (*Id.*)

Petitioner appealed the judgment to the Appellate Court, and filed an opening brief on or about November 9, 2009. (Doc. 14-1, Exh. J.) Petitioner, through counsel, raised three issues: (1) the Superior Court failed to properly offset his restitution; (2) the Superior Court erroneously ordered "$5,000" in oral recitation of his sentence; and (3) the Superior Court erred by not polling each separate juror on each individual count. (*Id.*)

---

[1]      Petitioner does not appear to contest the Appellate Court's recitation of the facts. Therefore, the Court presumes the state court's factual determinations are correct because Petitioner has not "rebutt[ed] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

[2]      Maricopa County Superior Court Case No. CR 1995-90186, CR 1995-090149, and CR 1999-095620.

In a memorandum decision filed on June 24, 2010, the Appellate Court affirmed Petitioner's convictions and sentences. (Doc. 14-1, Exh. L; *Ontjes*, 2010 WL 2540491 at *5.) Petitioner filed a Petition for Review in the Arizona Supreme Court on August 23, 2010 (Doc. 14-1, Exh. M), which was summarily denied on February 17, 2011 (Doc. 14-2, Exh. N).

Prior to the issuance of the Supreme Court's decision, on July 26, 2010, Petitioner filed a *pro se* Notice of Post-Conviction Relief. (Doc. 14-2, Exh. O.) Petitioner, through counsel, filed a Petition for Post-Conviction Relief on February 3, 2011. (Doc. 14-2, Exh. P.) The petition presented three claims: (1) Petitioner received ineffective assistance of trial counsel during plea negotiations when counsel failed to properly advise him on the sentencing range for his offenses; (2) Petitioner received ineffective assistance of trial counsel at the time of sentencing when counsel failed to object to the fines imposed; and (3) Petitioner received ineffective assistance of appellate counsel when he failed to challenge the fines imposed at sentencing on direct appeal. (*Id.*) The Superior Court found that Petitioner had presented a colorable claim for relief with regard counsel's advisal on sentencing ranges, and held an evidentiary hearing on May 20, 2011. (Doc. 14-2, Exh. S and T; Exh. 31-1, Exh. A.) During the hearing, the Superior Court heard testimony from trial counsel; at its conclusion, the Petition for Post-Conviction Relief was denied and dismissed. (*Id.*)

Petitioner filed a timely *pro se* Petition for Review on June 20, 2011. (Doc. 14-2, Exh. U.) *See* Ariz. R. Crim. P. 32.9(c). Finding that the petition did not identify: (1) "[t]he issues which were decided by the trial court and which [he] wished to present [the] court for review;" (2) [t]he facts material to a consideration of the issues which are presented;" and (3) "[t]he reasons why the petition should be granted," on June 24, 2011, the Appellate Court returned the petition and provided Petitioner 30 days to "file a proper petition for review." (Doc. 14-2, Exh. V.) On August 24, 2011, the Appellate Court dismissed the proceedings because it had "received neither a compliant petition for review, no[r] a request for extension of time." (Doc. 14-2, Exh. W.)

1   Petitioner filed the instant Petition for Writ of Habeas Corpus on April 2, 2012.

2   (Doc. 1.) Respondents filed an Answer (Doc. 14, 31), to which Petitioner filed a Reply

3   (Doc. 37, 44).

4                                    **DISCUSSION**

5   In his Petition for Writ of Habeas Corpus, Petitioner raises three grounds for relief.

6   Respondents argue in their Answer that in Ground One is not cognizable on federal

7   habeas review. Respondents further contend that Petitioner's claims in Grounds Two and

8   Three are procedurally barred and otherwise fail on their merits. In response, Petitioner

9   argues the merits of all three claims. He concedes that Grounds Two and Three are

10  unexhausted, but contends that they should not be barred from review. As set forth

11  below, the Court concludes that Petitioner's claims are either procedurally barred from

12  federal review or lack merit, and will recommend that all three grounds be denied.

13  **I.     Applicable Law**

14  The writ of habeas corpus affords relief to persons in custody pursuant to the

15  judgment of a State court in violation of the Constitution, laws, or treaties of the United

16  States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by

17  the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[3] 28 U.S.C. § 2244.

18  **A.     Standard for Habeas Relief**

19  Under AEDPA, a federal court "shall not" grant habeas relief with respect to "any

20  claim that was adjudicated on the merits[4] in State court proceedings" unless it:

21          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law,
22          as determined by the Supreme Court of the United States; or

23          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in
24          the State court proceeding.

25  _____

    [3]    The AEDPA applies only to those cases that were filed after its effective date,
26  April 24, 1996. *See Lindh v.* Murphy, 521 U.S. 320, 326-27 (1997).

27  [4]    The phrase "adjudicated on the merits" refers to a decision resolving a party's
    claim which is based on the substance of the claim rather than on a procedural or other
28  non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).

28 U.S.C. § 2254(d). In applying these standards, the federal habeas court reviews "the last reasoned state court decision addressing the claim in question." *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). "Where a state court's decision is unaccompanied by an explanation," the petitioner bears the burden to show that "there was no reasonable basis for the state court to deny relief" under 28 U.S.C. § 2254(d). *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784 (2011). *See also Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits— but that presumption can in some limited circumstances be rebutted.").

Under 28 U.S.C. § 2254(d)(1), "clearly established Federal law" refers to holdings of the Supreme Court in effect at the time the state court rendered its decision. *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application of" federal law if the court identifies the correct legal rule, but applies that rule to the facts of a particular case in an objectively unreasonable manner. *Williams*, 529 U.S. at 407-408; *Lockyer v*, 538 U.S. at 75. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87.

Under 28 U.S.C. § 2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). *See Maxwell v. Roe*, 628 F.3d 486, 500 (9th Cir. 2010), *cert. denied,* __ U.S. __, 132 S.Ct. 611 (2012); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). "[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Milke v. Ryan*, 711 F.3d 998, 1008 (9th Cir. 2013) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

However, federal habeas corpus relief is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "[T]he Supreme Court has long settled that the Fourteenth Amendment does not assure immunity from judicial error or uniformity of judicial decisions." *Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006). As emphasized by the Supreme Court, "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, ___ U.S. ___, 131 S.Ct. 13, 16 (2010) (original emphasis) (quoting 28 U.S.C. § 2254(a)). Federal courts accept a state court's interpretation of state law "and alleged errors in the application of state law are not cognizable in federal habeas corpus." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). It is not the policy of the federal courts to re-examine state court determinations of state law questions. *Estelle*, 502 U.S. at 67-68. Moreover, a habeas petitioner cannot "transform a state law issue into a federal one by merely asserting a violation of due process." *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (quoting *Langford*, 110 F.3d at 1389).

**B.      Exhaustion and Procedural Bar**

A federal court may not grant habeas relief under AEDPA if the petitioner has failed to exhaust his claim in state court. 28 U.S.C. § 2254(b)(1) & (c); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). "[A] petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

First, a petitioner must present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan*, 526 U.S. at 848.  A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. "[C]laims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them" either on direct appeal or through appropriate post-conviction relief.  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Second, if a petitioner fails to invoke the required procedure, exhaustion is not satisfied even if the petitioner raises the claim through an alternative procedure. *See e.g., Roettgen,* 33 F.3d at 38 (holding that petitioner failed to exhaust state remedies when he presented claim in the state habeas petition instead of Arizona Rule 32 post-conviction proceeding).

In addition to presenting a claim in the proper forum and vehicle, to satisfy the exhaustion requirement, "a petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'" *Gulbrandson v. Ryan*, 711 F.3d 1026, 1041 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582-83 (9th Cir. 2009). *See also Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir. 1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).  In presenting the factual basis of a claim, a petitioner need not present "every piece of evidence

7

supporting his federal claims," but must "provide the state court with the operative facts, that is, all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies." *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (internal quotation marks and citation omitted); *Baldwin v. Reese,* 541 U.S. 27, 28 (2004). In presenting the legal basis of a claim, a petitioner must alert the state court to the fact that he is asserting a federal claim and cite to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000) ("Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law") *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (finding "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial" is insufficient); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (finding a mere reference to the "Constitution of the United States" does not preserve a federal claim).

If a petitioner fails to fairly and fully present his federal claim in state court, and returning to state court would be "futile" because the state courts' procedural rules would bar consideration of the claim, the claim is procedurally defaulted and is barred from federal review. *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). *See State v. Mata*, 916 P.2d 1035, 1048-53 (Ariz. 1996); Ariz. R. Crim. P. 32.2(a) & (b); 32.1(a)(3) (post-conviction review is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)). This type of procedural default is known as "technical" exhaustion because although the claim was not actually exhausted in state

court, the petitioner no longer has an available state remedy. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

A claim may also be procedurally defaulted and barred from federal review if it was actually raised in state court, but found by that court to be defaulted on an adequate and independent state procedural ground, such as waiver or preclusion. *Beard v. Kindler*, 558 U.S. 53 (2009); *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991). Arizona courts have been consistent in their application of procedural default rules. *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Ariz. R. Crim. P. 32.2(a) is an adequate and independent procedural bar); *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) ("Arizona Rule of Criminal Procedure 32.2(a)(3) is independent of federal law and has been regularly and consistently applied, so it is adequate to bar federal review of a claim."); *Cook v. Schriro*, 538 F.3d 1000, 1026 (9th Cir. 2008).

A procedurally defaulted claim may not be barred from federal review "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones*, 691 F.3d at 1101 (quoting *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546). *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners as well as to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook*, 538 F.3d at 1027 (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d

1098, 1105 n.6 (9th Cir. 1999); *Cook*, 538 F.3d at 1028 fn. 13. Lastly, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule" a petitioner "must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496). *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.

## II.    Analysis

### A.    Ground One

In Ground One, Petitioner argues that the trial court erred when it failed to poll each jury member on each individual count for which he was found guilty. Following the reading of the verdicts, the Superior Court

> *sua sponte* asked the court clerk to "poll the jury with regard to the four guilty verdicts," also stating: "You don't have to do it separately. Just as to all counts." The court clerk then asked Juror Number One, "As to the guilty verdict on Count one; the guilty verdict on Count two; the guilty verdict on Count three; and the guilty verdict on Count six, is this [your] true verdict?" To which Juror Number One replied, "Yes." Thereafter, the clerk asked each individual juror either "As to the guilty verdicts, [are] these your true verdicts?" or, more simply, "Are these your true verdicts?" Each juror responded, "Yes."

(Doc. 14-1 at 113-114, Exh. L; *see also* Doc. 14-1 at 28-30, Exh. F.)

Petitioner presented this claim to the Appellate Court on direct appeal. In concluding that the Superior Court did not commit error, the Appellate Court reasoned as follows:

> ¶ 18 Defendant argues for the first time on appeal that the

trial court erred by grouping the offenses together when polling the jurors and not polling each separate juror individually on each individual count. Defendant has forfeited his right to relief on this issue unless he can prove both that fundamental error occurred and that it caused him prejudice. *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607. Fundamental error is error that goes to the foundation of the case, error that takes from a defendant a right essential to his defense, and error of such magnitude that a defendant could not have received a fair trial. *Id.* at ¶ 19. The trial court committed no error, let alone fundamental error, in polling the jurors as it did.

¶ 19 Prior to deliberation, the jurors were instructed by the trial court that the State had to prove each element of each charge beyond a reasonable doubt; that each count was a "separate and distinct offense" and the jurors were to decide each count separately uninfluenced by their decision on any other count; and that, to return a verdict, all jurors had to agree on what that verdict was. Jurors are presumed to follow the trial court's instructions, *State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996), and nothing in the record persuades us that they did not do so in this case.

¶ 20 Arizona Rule of Criminal Procedure 23.4 provides that a jury may be polled, at the request of the parties or on the courts own initiative, and that the court may direct the jurors to retire for further deliberations or discharge them if their responses do not support the verdicts. It does not require that each individual juror be polled as to the verdict on each individual offense *ad seriatum*. Thus, as long as the record is clear, as it was here, that the guilty verdicts reflected each juror's individual decision on the four offenses with which defendant was charged, we see no error in the mere fact that the trial court grouped the counts together.

¶ 21 In support of his arguments, defendant cites *State v. Diaz*, 221 Ariz. 209, 211 P.3d 1193 (App. 2009), which defendant maintains found that fundamental error occurred when the trial record established that "all the jurors had not been polled." Defendant's reliance on *Diaz* is misplaced for two reasons. First, in this case, the record indicates that all of the jurors were polled by the trial court. Second, and more importantly, the finding of fundamental error in *Diaz* was not based on the manner in which the jurors were polled but focused instead on whether the proper number of jurors were empanelled and deliberated. *Id.* at 214, ¶ 15, 211 P.3d at 1198; vacated by *State v. Diaz*, 223 Ariz. 358, 361-62, ¶¶ 14-17, 224 P.3d 174, 177-78 (2010). Therefore *Diaz* is not dispositive to our considerations.

¶ 22 Defendant fails to establish that the trial court committed any error, let alone fundamental error, in its polling of the jurors in this case. *See Lavers*, 168 Ariz. at 385, 814 P.2d at 342.

(Doc. 14-1 at 114-116, Exh. L.)

Respondents do not dispute that Petitioner exhausted his claim in Ground One in state court. Instead, they argue that his claim is purely a question of state law, citing the Appellate Court's reliance on Rule 23.4 of the Arizona Rules of Criminal Procedure in its decision. Consequently, Respondents maintain that Petitioner's claim is not cognizable. The Court agrees that, to the extent Petitioner challenges the group-count polling as a violation of state procedural rules, his claim is not cognizable on federal habeas review. However, although a challenge to the application of state law is not a basis for federal habeas relief, a state law error may be cognizable if it "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72, 75 (finding the question of whether the jury instruction "so infused the trial with unfairness as to deny due process of law" cognizable in federal habeas"); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

A defendant's Sixth Amendment right to a fair trial is violated when the "essential feature" of the jury is not preserved. *Williams v. Florida*, 399 U.S. 78, 100 (1970). "Due process dictates that each defendant in a federal criminal case has the right to have his guilt found, if found at all, only by the unanimous verdict of a jury of his peers." *United States v. Nelson*, 692 F.2d 83, 85 (9th Cir. 1982) (citation omitted). "Although their jury room votes form the basis of the announced verdict, the jurors remain free to dissent from the announced verdict when polled. In short, a jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered." *Nelson*, 692 F.2d at 84-85 (internal quotation omitted). The object of jury polling is "to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent.'" *Humphries v. Dist. of Columbia*, 174 U.S. 190, 194 (1899). However, it is a delicate line between ensuring that a defendant has been convicted by a unanimous verdict and coercing a unanimous verdict. *See Harrison v. Gillespie*, 640 F.3d 888, 903 fn. 12 (9th Cir. 2011); *United States v. Gambino*, 951 F.2d 498, 502 (2nd Cir. 1991)

("[t]he purpose of the poll is not to interfere with the deliberative process, but rather to insure that the defendant was convicted by a unanimous verdict") (citing *Humphries*, 174 U.S. at 194). "Whether the comments and conduct of the state trial judge infringed defendant's due process right to an impartial jury and fair trial" turns upon whether jurors were coerced "'into relinquishing their views in favor of reaching a unanimous decision.'" *Jiminez v. Myers*, 40 F.3d 976, 979 (9th Cir. 1993) (quoting *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983)). In making that determination, the Court considers the trial court's conduct "'in its context and under all the circumstances.'" *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988) (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)).

Petitioner has not specified any way in which the state-court decision unreasonably applied or was contrary to Supreme Court precedent, nor does he establish that the state court decision was based on an unreasonable factual determination. While the Appellate Court performed its fair-trial analysis in the context of fundamental error, its analysis was consistent with *Lowenfield* and existing Supreme Court precedent. *See supra.* The Appellate Court properly considered the totality of the circumstances surrounding the polling of the jury, emphasizing that, prior to deliberation, the Superior Court correctly instructed the jury on the law, advised the jury that they were to decide each count separately uninfluenced by their decision on any other count, and that to return a verdict, the jurors had to all be in agreement. *See DeWeaver v. Runnels*, 556 F.3d 995, 1007 (9th Cir. 2009) (denying habeas relief based on consideration of all circumstances surrounding trial court's interaction under *Lowenfield*). The Appellate Court properly concluded that no error had occurred because that the record was clear "that the guilty verdicts reflected each juror's individual decision on the four offenses with which defendant was charged." (Doc. 14-1 at 115, Exh. L.)

Petitioner argues in his reply that the judge advised she "[doesn't] like to stay past 5:00 p.m." and instructed "the bailiff to go check on jury to see if they were going to be much longer."(Doc. 44 at 1-2.) Thus, Petitioner presumably contends that the group-

polling implicitly coerced verdicts because "[t]o say that this entire portion of the trial was rushed would be an understatement." (Doc. 44 at 2.) As cited by the Appellate Court, here, all twelve jurors were individually polled by the Superior Court. The record does not reflect that the judge advised the jury concerning a desire to promptly conclude proceedings, or that any juror expressed hesitation, doubt, or confusion. The circumstances as a whole do not compel that the group-count polling coerced a unanimous verdict nor deprived the jurors of an opportunity to voice dissent such that it denied Petitioner due process of law. The Court therefore concludes that neither the Appellate Court's reasoning nor result was contrary to Supreme Court precedent. Accordingly, the Court will recommend that Ground One be denied.

### B.    Grounds Two and Three

Next, in Ground Two, Petitioner argues that he received ineffective assistance of trial counsel because counsel's advice improperly led him to reject a plea agreement which offered a lesser sentence than the one he received following trial. Petitioner argues that trial counsel failed to provide him with a written copy of the plea bargain, failed to advise Petitioner of the full range of possible of sentences if he lost at trial, and instead, advised him to reject the plea offer. In Ground Three, Petitioner further argues that trial counsel was ineffective for failing to object to excessive fines that were part of Petitioner's sentence.

As he concedes, Petitioner did not exhaust these claims in state court. Claims are exhausted "for purposes of federal habeas once the Arizona Court of Appeals has ruled on them" either on direct appeal or through appropriate post-conviction relief. *Swoopes*, 196 F.3d at 1010. Although Petitioner presented his ineffective assistance of counsel claims to the Superior Court in post-conviction relief proceedings, he did not present any of those claims for review to the Appellate Court. Petitioner's time to appeal has expired, *see* Ariz. R. Crim. P. 32.9(c), and a return to state court would otherwise be futile under Arizona's procedural rules. The time has passed to seek post-conviction relief in state court under Rule 32.4(a) of the Arizona Rules of Criminal Procedure, and Petitioner has

14

not shown that any of the exceptions to the time limits under Rule 32.1(d), (e), (f), (g) or (h) apply to him. As a result, Petitioner's claims are technically exhausted and procedurally defaulted.

Petitioner urges that the Court should excuse his failure to present his ineffective assistance of counsel arguments on appeal, because he did not obtain a copy of the evidentiary hearing transcript in time to articulate his claims. He provides:

> In 2011, Petitioner was housed at the Meadows Unit, Florence. Petitioner had an evidentiary hearing on 5/20/11 and shortly after that he received a letter from his public defender, Terry Reid, stating, if Petitioner wanted to appeal the decision of the court he would have to do it on his own, and because the only document [provided] by Terry Reid, was a court minute entry, stating, as in the record, PCR, is denied. And as Petitioner did[']t know how to do this on his own, he made an appointment with the paralegal at the Meadows Unit.

(Doc. 44 at 7-8.) While Petitioner timely filed a *pro se* appeal, he only stated in the Petition for Review form: "I would like to ask for an extension to file. Also I would like information on what's needed to file. I have not received any court transcripts." (Doc. 14-2, Exh. U.) Petitioner argues he made various attempts to meet with a prison paralegal and to obtain a transcript of the evidentiary hearing, but was unable to timely articulate his claims and complete a compliant petition. (Doc. 44) After the appeal was dismissed, Petitioner purports that he obtained some assistance, and then submitted a letter requesting to file a delayed appeal on September 16, 2011 (Doc. 18-1 at 8, Exh. Y), which appears to have been denied (Doc. 1 at 13).

Because the absence of the transcript did not impede Petitioner's *ability* to properly file a Petition for Review in order to challenge the Superior Court's decision, it does not excuse his failure to present his claims to the Appellate Court. *See Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir 1998) ("the cause of Boyd's procedural default is his insistence on having a transcript before filing a notice of appeal. Boyd's unfamiliarity with state appellate rules is no excuse….")

When a pro se petitioner is able to apply for post-conviction

15

> relief to a state court, the petitioner must be held accountable for failure to timely pursue his remedy to the state supreme court. To hold that illiteracy is a legitimate cause for failing to appeal to the state supreme court would allow petitioners to wait until the jurisdictional period lapsed and then proceed directly to federal court. Such a result would be contrary to the principles of comity underlying the cause and prejudice rule.

*Schneider v. McDaniel*, 674 F.3d 1144, 1153-1154 (9th Cir. 2012) (quoting *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986)). Even if Petitioner may argue that without the transcript he was prevented him from prevailing on his claims, he fails to allege that he was prevented presenting his arguments. *See Schneider*, 674 F.3d at 1153 ("cause is ordinarily shown by demonstrating that 'some objective factor external to [petitioner's] efforts to comply with the State's procedural rule.'") (quoting *Murray*, 477 U.S. at 488). In fact, Plaintiff's inability to present his ineffective assistance of counsel claims in state court is controverted by their presentation in the instant habeas petition, in that Petitioner maintained that he was without a transcript of the evidentiary hearing at the time of filing. Consequently, the Court finds that Petitioner has not demonstrated cause to excuse his default. Because Petitioner cannot show cause, the Court need not consider whether he suffered actual prejudice. *See Cook*, 538 F.3d at 1028 fn. 13 (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982) ("Since we conclude that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice.").[5]

Lastly, Petitioner has not demonstrated that review of the merits of the claims is

---

[5] To the extent that post-conviction relief counsel timely notified Petitioner of the conclusion of representation (*see* Doc. 18-1 at 12, Exh. Y) and Petitioner timely filed a Petition for Review, neither *Maples* nor *Martinez* apply in this case to excuse his default. *See Maples v. Thomas*, __U.S.__, 132 S. Ct. 912, 924 (2010) (finding that where an attorney abandons his client without notice, it constitutes "extraordinary circumstances beyond his control," and may be "cause" to excuse procedural default); *Martinez v. Ryan*, __U.S.__,132 S. Ct. 1309, 1320 (2012) (finding that where ineffective assistance of counsel in a post-conviction relief proceeding results in a failure to assert that there was ineffective assistance of counsel in the trial proceedings, it may be "cause" to excuse procedural default... However, "[t]he holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings...").

necessary to prevent a fundamental miscarriage of justice. Here, Petitioner essentially seeks to challenge the fairness of the sentences and fines he received. Undoubtedly, Petitioner would prefer a lesser sentence and fine than the one he received, and he may have achieved both had he accepted a plea offer instead of going to trial. However, he does not argue nor has he offered any supporting evidence of actual innocence, and thus has not presented new evidence that excuses his default under this exception. *See Cook*, 538 F.3d at 1028; *Schlup*, 513 U.S. at 324.

Because Petitioner has failed to show that cause precluded him from properly presenting his ineffective assistance of counsel claims in state court or that a fundamental miscarriage of justice would result if the claims were not heard on their merits, the Court will recommend that Ground Two and Three be denied.

## CONCLUSION

The record is sufficiently developed, and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 fn. 13 (9th Cir. 2011)*; Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010); *Ortiz v. Stewart,* 149 F.3d 923, 934 (9th Cir. 1998); 28 U.S.C.A. § 2254(e)(2). Based on the above analysis, the Court concludes that Petitioner's claims are either procedurally barred from review or fail on their merits. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 16th day of October, 2013.

Honorable Steven P. Logan
United States Magistrate Judge